UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
BESHIR MOHAMMED ZAHIR,                                  :

                Plaintiff,                               :

             - v. -                                      :

                                    06 Civ. 4629 (JES)

ROBERT S. MUELLER, Director,                            :
Federal Bureau of Investigation; UNKNOWN
U.S. FEDERAL GOVERNMENT AGENCY OR          :          ELECTRONICALLY FILED
AGENCIES; MICHAEL CHERTOFF, Secretary
of the Department of Homeland Security;                 :
EMILIO GONZALEZ, Director, U.S.
Citizenship and Immigration Services;                   :
MARY ANN GANTNER, District Director,
U.S. Citizenship and Immigration Services, N.Y.,    :

               Defendants.                              :
--------------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

———

                            MICHAEL J. GARCIA
                            United States Attorney for the
                            Southern District of New York
                            86 Chambers Street
                            New York, New York  10007
                            Tel. No.: (212) 637-2728
                            (FJL:3210)

F. JAMES LOPREST, JR.,
Special Assistant United States Attorney

              – Of Counsel –

## <u>TABLE OF CONTENTS</u>

Preliminary Statement..................................................................................................................1

Statement of the Case................................................................................................................3

ARGUMENT:

POINT I – THE COURT SHOULD DISMISS THE COMPLAINT
     FOR LACK OF SUBJECT MATTER JURISDICTION...........................................................5

A.     The Law Governing Review of Naturalization Decisions.......................................................5

     1.     The Political Branches' Plenary Power Over Immigration
           to the United States and the Deferential Standard of Judicial Review.........................5

     2.     The Naturalization Process............................................................................................7

B.     The Court Should Dismiss the Complaint
     for Lack of Subject Matter Jurisdiction................................................................................10

POINT II – THE COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILURE TO
     STATE A CLAIM UPON WHICH THE COURT MAY GRANT RELIEF.........................16

Conclusion.................................................................................................................................20

I

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abdul-Khalek v. Jenifer, 890 F. Supp. 666, 669 (E.D. Mich. 1995) . . . . . . . . . . . . . . . . . . . - 10 -

Ahmed v. Chertoff, 2006 WL 3771814 (S.D. Tex. Dec.15, 2006) . . . . . . . . . . . . . . . . . . . - 19 -

Al-Farisi v. Mueller, No. 06 Civ. 15504 (MGC), 2007 WL 1720145          (S.D.N.Y.
June 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 -, - 19 -

Alhamedi v. U.S. Att'y Gen'l, No. 07 Civ. 2541 (JGK), 2007 WL 1573935          (S.D.N.Y.
May 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 --17 -, - 19 -

Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005) . . . . . . . . . . . . . . . . . . - 17 -

Al-Kudsi v. Gonzales, 2006 WL 752556, at *2 (D. Or. Mar. 22, 2006) . . . . . . . . . . . . . . . - 16 -

Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991) . . . . . . - 2 -, - 3 -

Aparicio v. Blakeway, 302 F.3d 437, 439-40 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

Arenas-Yepes v. Gonzales, 421 F.3d 111, 114 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . - 12 -

Arshad v. Chertoff, 2007 WL 701185, at *2 (E.D. Tex. March 2, 2007) . . . . . . . . . . . . . . . - 18 -

Aslam v. Gonzales, 2006 WL 3749905, at 1 (W.D. Wash. Dec. 19, 2006) . . . . . . . . . . . . . - 16 -

Babel v. U.S. Dep't of Homeland Security, 321 F. Supp. 2d 963, 964 (N.D. Ill. 2004) . . . . - 18 -

Beneficial National Bank v. Anderson, 539 U.S. 1, 6 (2003) . . . . . . . . . . . . . . . . . . . . . . . - 10 -

Blives v. Gonzales, 2007 WL 1789122, at *2 (S.D. Fla. June 19, 2007) . . . . . . . . . . . . . . . - 19 -

Brown v. Ashcroft, 360 F.3d 346, 348 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

Chan v. Gantner, 464 F.3d 289, 290 (2d Cir. 2006) (per curiam) . . . . . . . . . . . . . . . . - 5 -, - 14 -

Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984)   - 12 -

City of Rome v. Verizon Communications, Inc., 362 F.3d 168, 173 (2d Cir. 2004) . . . . . . . - 10 -

Clark v. Martinez, 125 S. Ct. 716, 720 n.1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

ii

Costello v. United States, 365 U.S. 265, 269 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

Daami v. Gonzales, 2006 WL 1457862, at *4 (D.N.J. May 22, 2006) . . . . . . . . . . . . . . . - 16 -

Damra v. Chertoff, 2006 WL 1786246, at *3 (N.D. Oh. June 23, 2006) . . . . . . . . . . - 12 -, - 15 -

Dan Li v. INS, No. 00 Civ. 7868 (CBM), 2003 WL 102813, at *3 (S.D.N.Y. Jan. 10, 2003)   - 7 -

Danilov v. Aguirre, 370 F. Supp. 2d 441, 444 (E.D. Va. 2005) . . . . . . - 12 -, - 14 -, - 15 -, - 18 -

Davis v. Michigan Dep't of Treas., 489 U.S. 803, 809 (1989) . . . . . . . . . . . . . . . . . . . . . . . - 12 -

Duncan v. Walker, 533 U.S. 167, 174 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

El Kassemi v. Dep't of Homeland Security, 2006 WL 2938819                      (D.N.J.
Oct. 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 12 -, - 15 -, - 18 -

El-Daour v. Chertoff, 417 F. Supp. 2d 679, 684 (W.D. Pa. 2005) . . . . . . . . . . . . . . - 16 -, - 18 -

Estrin v. United States, 80 F.2d 105, 105 (2d Cir. 1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

Fedorenko v. United States, 449 U.S. 490, 506 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 16 -

Hamm v. United States, 483 F.3d 185, 187 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

Harris v. City of New York, 156 F.3d 243, 247 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 16 -

Hussein v. Gonzales, 474 F. Supp. 2d 1265, 1267 (M.D. Fla. 2007) . . . . . . . . . . . . . . . . . . - 16 -

In re Yao Quinn Lee, 480 F.2d 673, 674 n.2 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

INS v. Pangilinan, 486 U.S. 875, 883-84 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -, - 6 -

Khan v. Chertoff, 2006 WL 2009055, at *2 (D. Ariz. July 14, 2006) . . . . . . . . . . . . . . . . . . - 16 -

Khelifa v. Chertoff,  433 F. Supp. 2d 836, 841-42 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . - 16 -

Kheridden v. Chertoff, 2007 WL 674707, at *5 (D.N.J. Feb. 28, 2007) . . . . . . . . . . . . . . . . - 17 -

4

King v. St. Vincent's Hospital, 503 U.S. 215, 221 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . - 12 -

Kokkonen v. Guardian Life Ins., 511 U.S. 375, 378 (1994) . . . . . . . . . . . . . . . . . . . . . . . - 10 -

Langer v. McElroy, No. 00 Civ. 2741 (RWS), 2002 WL 31789757                    (S.D.N.Y.
Dec. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168
(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

Mahd v. Chertoff, 2007 WL 891867, at **2-3 (D. Colo. Mar. 7, 2007) . . . . . . . . . . . . . . . - 16 -

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . - 3 -

Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

Maney v. United States, 278 U.S. 17, 22 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

Manzoor v. Chertoff, 472 F. Supp. 2d 801, at 807-10 (E.D. Va. 2007) . . . . . . . . . . . . . . . - 16 -

Martinez v. Gonzales, 463 F. Supp. 2d 569, 571  (E.D. Va. 2006) . . . . . . . . . . - 12 -, - 14 -, - 15 -

Meyersiek v. U.S. CIS, 2006 WL 1582397, at *3 (D.R.I. June 6, 2006) . . . . . . . . . . . . . . - 16 -

Mostovoi v. Sec'y of DHS, No. 06 Civ. 6388 (GEL), 2007 WL 1610209 . . . . . . . . . - 16 -, - 17 -

Murra, 178 F.2d 670, 672 (7th Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

Nagahi v. INS, 219 F.3d 1166, 1170 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

Office of Personnel Management v. Richmond, 496 U.S. 414, 432 (1990) . . . . . . . . . . . . . - 11 -

Pierno v. INS, 397 F.2d 949, 951 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -

Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) . . . . . . . . . . . - 10 -

Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . - 18 -

Shalabi, 2006 WL 3032413Shalabi, 2006 WL 3032413 . . . . . . . . . . . . . . . . . . . - 16 -, - 18 -, - 19 -

Shalan v. Chertoff, 2006 WL 42143, at * 1 (D. Mass. Jan. 6, 2006) . . . . . . . . . . . . . . . . . . - 16 -

Tieri v. INS, 457 F.2d 391, 393 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

iv

Tovar-Alvarez v. U.S. Atty. Gen'l, 427 F.3d 1352-53 (11th Cir. 2005) . . . . . . . . . . . . . . . . . - 9 -

United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 372 (1988)   - 14 -

United States v. Ginsberg, 243 U.S. 472, 474-75 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . - 7 -

United States v. Manzi, 276 U.S. 463, 467 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

United States v. Minker, 350 U.S. 179, 197 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

United States v. Pizzarusso, 388 F.2d 8, 9 (2d Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -

United States v. Ramos, 933 F.2d 968, 971 n.1 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . - 18 -

United States v. Testan , 424 U.S. 392, 399 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

Walji v. Gonzales, 2007 WL 1747911, at *2 (5th Cir. June 19, 2007) . . . . . . . . . . . . - 12 --15 -

Zheng v. INS, 933 F. Supp. 338, 341-43 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -

## FEDERAL STATUTES

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

8 U.S.C. §  1445(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -

8 U.S.C. §  1446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

8 U.S.C. § 1421(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

8 U.S.C. § 1421(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -, - 10 -

8 U.S.C. § 1423(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 8 -

8 U.S.C. § 1445(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -, - 7 -, - 17 -

8 U.S.C. § 1446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 8 -

8 U.S.C. § 1446(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

8 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 -

8 U.S.C. § 1447(a) (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

8 U.S.C. § 1448(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

Const., Art. I, § 8, cl. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

Homeland Security Act of 2002, Pub. L. 107-296, § 471(a), 116 Stat. 2135 (Nov. 25, 2002) - 14 -

## <u>FEDERAL REGULATIONS</u>

8 C.F.R. § 103.2(b)(1) (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

8 C.F.R. § 310.3 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

8 C.F.R. § 310.5 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

8 C.F.R. § 335.2(b) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 12 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BESHIR MOHAMMED ZAHIR,                          :

              Plaintiff,              :

           - v. -                   :

                                        06 Civ. 4629 (JES)
ROBERT S. MUELLER, Director,                    :
Federal Bureau of Investigation; UNKNOWN                    ELECTRONICALLY FILED
U.S. FEDERAL GOVERNMENT AGENCY OR               :
AGENCIES; MICHAEL CHERTOFF, Secretary
of the Department of Homeland Security;         :
EMILIO GONZALEZ, Director, U.S.
Citizenship and Immigration Services;           :
MARY ANN GANTNER, District Director,
U.S. Citizenship and Immigration Services, N.Y., :

            Defendants.                 :
------------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

### Preliminary Statement

Defendants Robert S. Mueller, Director of the Federal Bureau of Investigation ("FBI");

unknown United States federal Government agency or agencies; Michael Chertoff, United States

Secretary of Homeland Security; Emilio Gonzalez, Director of United States Citizenship and

Immigration Services ("CIS"); and Andrea Quarantillo, District Director of the CIS's New York

District[1] (collectively, "defendants" or "Government"), by their attorney, Michael J. Garcia, United

States Attorney for the Southern District of New York, respectfully submit this memorandum of law

in support of the Government's motion to dismiss the amended complaint of  plaintiff Beshir

---

[1] Andrea Quarantillo has succeeded Mary Ann Gantner as the District Director of the CIS's
New York District and therefore should be substituted as a defendant, pursuant to Fed. R. Civ. P.
25(d)(1).

Mohammed Zahir ("plaintiff" or "Zahir"), for lack of subject matter jurisdiction and failure to state a claim upon which the Court may grant relief, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

Plaintiff claims he submitted an application ("naturalization application" or "N-400 application") to the CIS's New York District office, seeking to become a naturalized citizen of the United States. He claims the CIS interviewed him in connection with the application in November 2005, but that the Federal Bureau of Investigation ("FBI") has not yet completed its statutorily-mandated investigation into his background. Now, plaintiff has filed the instant action seeking an Order directing "his immediate naturalization."

The Court should dismiss the amended complaint for lack of subject matter jurisdiction. <u>See</u> Argument Point I.B, <u>infra</u>, at 10-16. A provision of the naturalization laws confers jurisdiction upon district courts where the CIS has not completed its adjudication of a naturalization application within 120 days of an applicant's naturalization "examination." As the only circuit court to have considered the question has recently held, however, that examination is completed only when the FBI and related agencies have completed their investigation into the applicant's background. Here, because the FBI has not yet completed its investigation into petitioner's background, the examination contemplated by the naturalization statutes has not yet been completed – and, therefore, the 120-day period described in the jurisdictional provision has not yet begun to run, let alone lapse.

The Court should also dismiss the amended complaint for failure to state a claim upon which the Court may grant relief. <u>See</u> Argument Point II, <u>infra</u>, at 16-19. To the extent that petitioner seeks to have this Court adjudicate his naturalization application, his claims are barred by a statute vesting the Attorney General and his delegates with "sole authority" to naturalize persons as citizens of the

United States.  Moreover, Congress has made a "personal investigation" of all naturalization applicants a prerequisite to naturalization – a requirement courts have declined to waive or take upon themselves (recognizing that the judiciary is ill-suited to perform such investigations).  Nor is it within the power of the Court to grant petitioner the alternative relief that he seeks –  an Order that the CIS "immediately" adjudicate his naturalization application – because Congress has barred the CIS from adjudicating the naturalization application of any alien for whom the FBI has not completed a background check.  Indeed, even courts that have declined to dismiss cases like this have declined to grant such relief in light of the large administrative burdens faced by the CIS and FBI.

## STATEMENT OF THE CASE[2]

Zahir claims he was admitted to the United States as a lawful permanent resident in January 1992 and that he resides in this District.  See Amended Complaint and Amended Petition for Hearing on Naturalization ("Amended Complaint") ¶¶ 1, 12.  He claims that on March 10, 2005, he submitted a naturalization application to the CIS's New York District office, pursuant to §§ 310 and 312 of the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. §§ 1421 & 1423.  Amended Complaint ¶ 13.

On August 10, 2005, Zahir claims, the CIS interviewed him in connection with his naturalization application at its New York District office.  Amended Complaint ¶ 14 & Exhibit 2.

---

[2]For the purposes of its cross-motion only, the Government presumes the accuracy of the factual allegations contained in the amended complaint.  See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); Harris v. City of New York, 156 F.3d 243, 247 (2d Cir. 1999).  The Court may, however, refer to evidence outside the pleadings in order to resolve factual issues on which the existence of its jurisdiction depends.  See, e.g., Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991) (citing cases).

At that time, Zahir claims, he "addressed" his criminal history, including his 1996 conviction for passing a bad check, for which he was sentenced to pay a $500 fine and serve one year's probation. Id. ¶ 14 & n.2. Zahir further claims that, at the CIS interview, he successfully demonstrated that he meets certain statutory requirements for naturalized citizenship, i.e., a knowledge of United States history and government and the ability to communicate in the English language. Id. & Exhibit 2. Following the interview, Zahir claims he was informed by a CIS officer that a decision on his naturalization application "would be forthcoming." Id.

Zahir claims he made several inquiries of the CIS regarding his naturalization application. Amended Complaint ¶ 11. He claims the CIS responded to his inquiries by letters dated February 28, 2006, and March 13, 2006. Id. & Exhibit 6. In its March 13, 2006 letter, the CIS informed Zahir that his naturalization application was "pending receipt of security checks" and that it would adjudicate the application "[u]pon receipt of all security checks." Id..[3]

Approximately three months later, on or about June 14, 2006, Zahir filed the instant complaint, in which he seeks, inter alia, a hearing on his naturalization application or, in the alternative, an Order "grant[ing] citizenship." See Complaint, dated June 14, 2006, ¶ 22. On or about April 17, 2007, with leave of the Court, Zahir filed an amended complaint presenting several alternative claims and seeking essentially the same relief. See Amended Complaint ¶ 42(1)-(2).

---

[3]According to the FBI, Zahir's background investigation is not yet complete. See Declaration of Michael A. Cannon, dated May 18, 2007 ("Cannon Decl.") ¶ 36  (annexed as an exhibit to the Declaration of F. James Loprest, Jr., dated June 29, 2007).

## ARGUMENT

## POINT I

## THE COURT SHOULD DISMISS THE AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

### A.     The Law Governing Review of Naturalization Decisions

#### 1.     The Political Branches' Plenary Power Over Immigration to the United States and the Deferential Standard of Judicial Review

Congress is given power by the Constitution "to establish a[] uniform Rule of Naturalization." Const., Art. I, § 8, cl. 4.     In the Immigration Act of 1990 ("ImmAct 90"), Congress removed naturalization from the courts and vested the Attorney General with "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a) (as amended by ImmAct 90, Pub. L. No. 101-649, Title IV, 104 Stat. 4978, 5038-48 (Nov. 29, 1990)); see also, e.g., INS v. Pangilinan, 486 U.S. 875, 883-84 (1988) (courts lack "power to make someone a citizen," except to extent authorized by Congress).[4]

---

[4]Prior to 1990, courts had exclusive jurisdiction to naturalize applicants as citizens of the United States. See 8 U.S.C. § 1421(a) (1988); see also generally Chan v. Gantner, 464 F.3d 289, 290 (2d Cir. 2006) (per curiam). A naturalization applicant petitioned the district court, see 8 U.S.C. §§ 1445(a), (b) (1988), 8 C.F.R. § 334.1 (1991), and then the former Immigration and Naturalization Service ("INS") conducted an investigation and made a recommendation to the district court, see 8 U.S.C. §§ 1445(d), 1446(b), (d) (1988); 8 C.F.R. §§ 334.1, 335.1, & 335.12 (1991); see also Berenyi v. Dist. Dir., INS, 385 U.S. 630, 635 n.7 (1967). Thereafter, the court was authorized to hold a hearing on the naturalization complaint, and was required to hold a hearing if requested by the applicant. See 8 U.S.C. § 1447(a), (b) (1988). The INS examiner's findings and recommendations were not binding on the court, and the court could entirely disregard them. See, e.g., Berenyi, 385 U.S. at 635 n.7 (noting district court disregarded all information from INS examiner); Application of Murra, 178 F.2d 670, 672 (7th Cir. 1950) (where court holds hearing on naturalization complaint, findings and recommendations of INS examiner were not "of any consequence"). Citing judicial backlogs, however, Congress thoroughly revised the naturalization process, ultimately enacting legislation creating the current system of administrative naturalization, under which naturalization applications are adjudicated by the agency, with de novo judicial review of an application's denial.

(continued...)

The Supreme Court has held that naturalized citizenship in the United States is a "high privilege," United States v. Manzi, 276 U.S. 463, 467 (1928), and has called its "[a]cquisition . . . a solemn affair," Costello v. United States, 365 U.S. 265, 269 (1961) (quoting Chaunt v. United States, 364 U.S. 350, 352 (1960)); see also United States v. Minker, 350 U.S. 179, 197 (1956) ("[w]hen we deal with citizenship we tread on sensitive ground") (Douglas, J., concurring). Accordingly, the burden of demonstrating eligibility for naturalized United States citizenship rests entirely on the alien seeking that relief:

> When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by "clear, unequivocal, and convincing evidence." But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.

Berenyi, 385 U.S. at 636-37 (footnotes, citations omitted); accord Pangilinan, 486 U.S. at 886 (quoting Berenyi); Tieri v. INS, 457 F.2d 391, 393 (2d Cir. 1972); see also 8 C.F.R. §§ 103.2(b)(1) & 316.10(a)(1) (2005).

Any doubts regarding the Government's treatment of a naturalization application "should be resolved in favor of the United States and against the claimant." Berenyi, 385 U.S. at 637 (citation omitted); see also Manzi, 276 U.S. at 467 ("Citizenship is a high privilege, and when doubts exist concerning a grant of it, generally at least, they should be resolved in favor of the United States and

---

[4](...continued)

See, e.g., H. Rep. No. 101-187, 101st Cong., 1st Sess. 8-9 (July 27, 1989); S. Rep. No. 101-55, 101st Cong., 1st Sess. 3 (June 19, 1989). This administrative naturalization system was ultimately enacted and codified at 8 U.S.C. § 1421(c). See ImmAct 90, § 401(a), 104 Stat. 5038 (1990).

against the claimant.") (citing <u>Swan & Finch Co. v. United States</u>, 190 U. S. 143, 146 (1903)).

Moreover, "[n]o alien has the slightest right to naturalization unless all statutory requirements are

complied with," <u>United States v. Ginsberg</u>, 243 U.S. 472, 474-75 (1917), and "there must be strict

compliance with all the congressionally imposed prerequisites to the acquisition of citizenship,"

<u>Fedorenko v. United States</u>, 449 U.S. 490, 506 (1981).  <u>See also</u> <u>Maney v. United States</u>, 278 U.S.

17, 22 (1928) ("not only the conditions attached to the grant, but those attached to the power of the

instrument used by the United States to make the grant must be complied with strictly, as in other

instances of Government gifts").

       2.      **The Naturalization Process**

Under the immigration regulations, the administrative naturalization process is generally

divided into several discrete stages.  <u>See</u> 8 C.F.R. Parts 335 & 336 (2006); <u>see also</u> <u>Aparicio v.</u>

<u>Blakeway</u>, 302 F.3d 437, 439-40 (5th Cir. 2002) (describing administrative naturalization application

process); <u>Dan Li v. INS</u>, No. 00 Civ. 7868 (CBM), 2003 WL 102813, at *3 (S.D.N.Y. Jan. 10, 2003)

(same); <u>Langer v. McElroy</u>, No. 00 Civ. 2741 (RWS), 2002 WL 31789757, at *2 (S.D.N.Y. Dec. 13,

2002) (same).  First, an applicant must submit completed application materials to the CIS, including,

<u>inter alia</u>, a complete and accurate Form N-400, a set of fingerprints, criminal background

information, and information reflecting satisfaction of the statutory eligibility requirements for

naturalization.  <u>See generally</u> 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1, & 334.2 (2006).

Next, the applicant must undergo a thorough examination by the CIS and other agencies.  The

applicant must submit to questioning under oath by a CIS naturalization examiner with respect to

his satisfaction of the general eligibility requirements.  <u>See</u> 8 U.S.C. §§1427(a)-(d) (general

naturalization requirements relating to residence in United States, physical presence in country, and

moral character); <u>see also</u> 8 C.F.R. §§ 316.14 & 335.2-.3 (2006).  Most applicants must then be

tested to ensure they fulfill the statutory requirements of proficiency in the English language and a knowledge of United States history and civics. <u>See</u> 8 U.S.C. § 1423(a); 8 C.F.R. Part 312 (2006). The applicant must also submit to a "personal investigation" into his background. <u>See</u> 8 U.S.C. §§ 1446(a), (b), (d); <u>see also</u> 8 C.F.R. §§ 335.1 & 335.2(b) (2006).[5]

In 1997, Congress heightened these requirements by enacting legislation requiring naturalization applicants to undergo a complete background check by the FBI. Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998 ("1997 Appropriations Act"), Pub. L. 105-119, Title I, 111 Stat. 2440, 2448-49 (Nov. 26, 1997). The legislation specifically prohibits the CIS from adjudicating any naturalization application where

---

[5]In pertinent part, 8 U.S.C. § 1446 reads as follows:

Investigation of applicants; examination of applications

(a) Waiver

Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization. The Attorney General may, in his discretion, waive a personal investigation in an individual case or in such cases or classes of cases as may be designated by him.

(b) Conduct of examinations; authority of designees; record

The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization . . . .

. . . .

(d) Determination to grant or deny application

The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor.

the FBI has not yet cleared the applicant. See 1997 Appropriations Act, 111 Stat. at 2448-49 (1997) ("[N]one of the [agency's] funds . . . shall be used to complete adjudication of an application for naturalization unless the [agency] has received confirmation from the [FBI] that a full criminal background check has been completed.").

If the CIS approves the naturalization application, the applicant will move to the final stage of processing, which involves the scheduling of a public "oath ceremony" before a federal judge or naturalization officer, at which the applicant must swear allegiance to the United States. See 8 U.S.C. § 1448(a); 8 C.F.R. § 310.3 & Part 337 (2006).[6] Where the CIS has not approved a naturalization application, the INA establishes two distinct circumstances under which a district court may intervene in the process. The first is where the agency has not rendered a decision on an application within 120 days of the completion of the applicant's "examination," under which circumstances the applicant may apply to the United States district court for the district in which he resides for a de novo hearing on the application, pursuant to INA § 336(b), 8 U.S.C. § 1447(b); the court may then either determine the matter itself or remand it to the CIS, with instructions, see id.; see also 8 C.F.R. § 310.5 (2006). The second is where the CIS has initially denied a naturalization application, and that denial has been upheld following an administrative appeal hearing before a senior naturalization officer, see 8 U.S.C. § 1447(b); then the unsuccessful applicant may apply to the district court for the district in which he resides for a de novo hearing, pursuant to INA § 310(c), 8 U.S.C. § 1421(c); see also 8 C.F.R. §§ 310.5(b) & 336.9 (2006).[7]

---

[6]An alien is considered to be admitted to naturalized citizenship upon swearing that oath of allegiance. See, e.g., In re Yao Quinn Lee, 480 F.2d 673, 674 n.2 (2d Cir. 1973); Tovar-Alvarez v. U.S. Atty. Gen'l, 427 F.3d 1352-53 (11th Cir. 2005).

[7]Under INA § 310(c), a district court's review of a denial of naturalization is made "in accordance with chapter 7 of Title 5," i.e., the Administrative Procedure Act ("APA"). 8 U.S.C. §
(continued...)

**B.    The Court Should Dismiss the Amended Complaint
       for Lack of Subject Matter Jurisdiction**

It is well settled that "[t]he burden of proving jurisdiction is on the party asserting it." Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) (citation omitted); see also Kokkonen v. Guardian Life Ins., 511 U.S. 375, 378 (1994) (petitioner faced with motion to dismiss must establish jurisdiction); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (party claiming jurisdiction must allege facts supporting assertion) (citing cases).    Thus, the "well-pleaded complaint" rule requires a petitioner to state the basis for a federal court's subject matter jurisdiction on the face of his complaint.  See, e.g., Beneficial National Bank v. Anderson, 539 U.S. 1, 6 (2003) ("a suit arises under the Constitution and laws of the United States only when the petitioner's statement of his own cause of action shows that it is based upon those laws or that Constitution") (quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)); City of Rome v. Verizon Communications, Inc., 362 F.3d 168, 173 (2d Cir. 2004).[8]

_____

[7](...continued)
1421(c).  However, in contrast to the generally limited review provided by the APA, see 5 U.S.C. § 706,  INA § 310(a) provides that review of a naturalization denial "shall be de novo, and the Court shall make its own findings of fact and conclusions of law and shall, at the request of the [applicant], conduct a hearing de novo on the application," 8 U.S.C. § 1421(c); see also, e.g., Nagahi v. INS, 219 F.3d 1166, 1169 (10th Cir. 2000) (discussing review provisions of INA § 310(c); calling "grant of authority [to district court] unusual in its scope"); Abdul-Khalek v. Jenifer, 890 F. Supp. 666, 669 (E.D. Mich. 1995) (in denying naturalization application, considering evidence of applicant's absence from U.S. that was not considered by INS).

[8]In actions against the Government, the rule applies with greater force, inasmuch as the United States enjoys sovereign immunity from suit in the absence of a specific statutory consent to be sued.    See, e.g., United States v. Mitchell, 445 U.S. 535, 538 (1980) (waiver of sovereign immunity "cannot be implied but must be unequivocally expressed") (quoting United States v. King, 395 U.S. 1, 4 (1969)); Hamm v. United States, 483 F.3d 185, 187 (2d Cir. 2007) ("sovereign immunity is 'jurisdictional in nature,' [and] thus where a waiver of sovereign immunity does not apply, a suit should be dismissed under Fed. R. Civ. P. 12(b)(1)"); Presidential Gardens Assoc. v. United States ex rel. Sec'y of Housing and Urban Development, 175 F.3d 132, 139 (2d Cir. 1999) ("A showing of jurisdiction is not alone sufficient to allow the instant suit to proceed – there must also be a showing of specific waiver of sovereign immunity."); Office of Personnel Management v.
(continued...)

Here, Zahir asserts that the Court has jurisdiction under several statutes, including, <u>inter alia</u>, INA § 336(b), 8 U.S.C. § 1447(b). Amended Complaint ¶ 7. Zahir argues that because the CIS interviewed him in connection with his naturalization application on August 10, 2005 – <u>i.e.</u>, more than 120 days before he filed his complaint – jurisdiction to consider his claims is conferred upon the Court by INA § 336(b), which provides for jurisdiction if the CIS has not adjudicated a naturalization applicant within 120 days of an applicant's naturalization examination. <u>See</u> Amended Complaint ¶¶ 7, 14, 16, 20.

The Court should reject Zahir's claim. In INA § 336(b), Congress provided for district court jurisdiction where "there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which <u>the examination</u> is conducted." 8 U.S.C. § 1447(b) (emphasis added). The statute referred to in INA § 336(b), – <u>i.e.</u>, 8 U.S.C. § 1446 – is entitled "Investigation of applicants; examination of applications," thereby indicating the "examination" contemplated by INA § 336(b) encompasses a full investigation into an applicant's eligibility for naturalization – including the mandatory background investigation – and is not merely a discrete one-time event. Thus, in affirming the dismissal of a complaint closely similar to Zahir's, the Fifth Circuit – the only Court of Appeals to have considered the question – recently held:

> Looking to the statutory and regulatory framework as a whole, from which we draw inferences of intent, we cannot read the word "examination" in 8 U.S.C. § 1447(b), the triggering event for the 120-day period, to mean an examination that is premature because the FBI investigation mandated by 8 C.F.R. § 335.2(b) has not occurred. We therefore hold that when the CIS examination is premature because the mandatory security investigation is not complete, the 120-day time period of 8 U.S.C. § 1447(b) does not begin to run until CIS receives the FBI's "definitive response," described in 8 C.F.R. § 335.2(b).

<u>Walji v. Gonzales</u>, 2007 WL 1747911, at *2 (5th Cir. June 19, 2007) (footnote omitted); <u>see also</u>,

---

[8](...continued)
<u>Richmond</u>, 496 U.S. 414, 432 (1990) ("authorizations for suits against the Government must be strictly construed in its favor").

e.g., Martinez v. Gonzales, 463 F. Supp. 2d 569, 571  (E.D. Va. 2006) (holding that the naturalization "examination" included background investigation, and that 120-day period did not begin to run until investigation was complete); Danilov v. Aguirre, 370 F. Supp. 2d 441, 444 (E.D. Va. 2005) (same); El Kassemi v. Dep't of Homeland Security, 2006 WL 2938819, at *2 (D.N.J. Oct. 13, 2006) (same); Damra v. Chertoff, 2006 WL 1786246, at *3 (N.D. Oh. June 23, 2006) (same).

Because Congress has "directly spoken" to the issue, the Court's inquiry should end.  See Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984); Arenas-Yepes v. Gonzales, 421 F.3d 111, 114 (2d Cir. 2005).  However, even assuming arguendo that the meaning of the word "examination" is ambiguous, the Court should interpret the term "examination" within the context of the overall statutory scheme established by Congress for the processing of naturalization applications.  See, e.g., King v. St. Vincent's Hospital, 503 U.S. 215, 221 (1991) ("A statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context."); Davis v. Michigan Dep't of Treas., 489 U.S. 803, 809 (1989) (word in statute must be read in context of statutory scheme).  The Court should follow the Supreme Court's instruction that it "should not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law . . . and give to it such a construction as will carry into execution the will of the Legislature." Kokoszka v. Belford, 417 U.S. 642, 650 (1974) (citation omitted); United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 455 (1993) ("Over and over we have stressed that '[i]n expounding a statute, we must not be guided by a single sentence . . . but look to the provisions of the whole law, and to its object and policy.'") (quoting United States v. Heirs of Boisidore, 49 U.S. (8 How.) 113, 122 (1849)).

The "object and policy" of "the whole law" are clear: aliens are to be investigated completely

before being admitted to citizenship.  See, e.g., 8 U.S.C. § 1445(a).  In order to effectuate the congressional mandate, the CIS has promulgated regulations authorizing its officers to delve deeply into naturalization applicants' eligibility, thus indicating that the "examination" is a process – and, where necessary, a protracted one.  See 8 U.S.C. §§ 1446(a) & (b); see also generally 8 C.F.R. Part 335 (2006).  In examining a naturalization applicant, CIS officers may issue subpoenas to compel the attendance and testimony of witnesses; demand the production of relevant papers, books, and documents; travel outside the country to obtain evidence, see 8 C.F.R. §§ 335.2(d)(1)-(5), 335.3(b) (2006); and schedule follow-up interviews where necessary, see id. § 335.3(b) (2006) (providing that CIS "may continue the initial examination . . . to afford the applicant an opportunity to overcome deficiencies . . . that may have arise[n] during the examination").[9]

Thus, although Zahir's Amended complaint is premised upon the assumption that the "examination" contemplated by INA § 336(b) is a discrete, one-day event, that construction is not consistent with the statutory scheme taken as a whole.  See, e.g., Walji, ___F.3d___, 2007 WL 1747911, at *2 (rejecting "theory [that] the statute's use of the words 'date' and 'conducted' makes the examination a single event that triggers the 120-day period"); Martinez, 463 F. Supp. 2d at 571 (it is "clear that Congress intended for the examination of an applicant to entail not just a single interview, but a host of investigatory mechanisms, including an FBI criminal background check" ); Danilov, 370 F. Supp. 2d at 444 (noting that "the statute provides that an 'examination' may include the issuance of subpoenas to compel the attendance and testimony of witnesses and the production of relevant papers, books and documents and the taking of testimony concerning any matter touching

---

[9]Indeed, the Second Circuit has held in the arguably less compelling context of applications for lawful residency that the Government "must not be frustrated in its duty fully to investigate the eligibility of aliens seeking to become permanent residents of this country." Pierno v. INS, 397 F.2d 949, 951 (2d Cir. 1968); see also United States v. Pizzarusso, 388 F.2d 8, 9 (2d Cir. 1967) ("Our national government has a legitimate interest in ascertaining the background of individuals seeking admission to the United States.").

or affecting the admissibility of any applicant for naturalization").

Moreover, as the Fifth Circuit held in <u>Walji</u>, Zahir's interpretation would render superfluous the congressional requirement that a background investigation take place before an examination is considered complete. <u>Walji</u>, __ F.3d __, 2007 WL 1747911, at *2 (interpreting "examination" as the triggering event for jurisdictional purposes would render superfluous the requirement of the "FBI's security investigation"). As the Supreme Court has repeatedly held, "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001) (internal quotation marks omitted); <u>United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.</u>, 484 U.S. 365, 372 (1988) ("[S]tatutory construction . . . is a holistic endeavor.").

Finally, Zahir's interpretation is not supported by the legislative history of the naturalization laws. Before 1990, the INS[10] conducted a so-called "preliminary examination" of all naturalization applicants – including an investigation into applicants' backgrounds – only upon the completion of which would a reviewing court hold a final hearing on the application and make a "recommendation" as to whether an applicant should be naturalized. <u>See</u> S. Rep. 91-534, Pub. L. 91-136, at 1441 (Nov. 18, 1969). When Congress altered the procedures for naturalization in 1990, as noted <u>supra</u>, it merely substituted the word "examination" for "preliminary examination" and the word "determination" for "recommendation" in 8 U.S.C. § 1447, <u>see</u> ImmAct 90, § 407(d)(13)(D) (1990), thereby signaling its intent that naturalization applicants continue to undergo full background investigations <u>before</u> coming into court.

---

[10]On March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions respecting the processing of applications for naturalized citizenship in the United States were assumed by the CIS in the United States Department of Homeland Security. <u>See</u> Homeland Security Act of 2002, Pub. L. 107-296, § 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002); <u>see also</u> <u>Clark v. Martinez</u>, 533 U.S. 371, 374 n.1 (2005); <u>Chan</u>, 464 F.3d at 292; <u>Brown v. Ashcroft</u>, 360 F.3d 346, 348 (2d Cir. 2004).

In light of the foregoing, several courts – although not the three district judges to have considered the question in this District – have dismissed complaints for lack of subject matter jurisdiction where naturalization applicants could not show that full examinations, including FBI background investigations, had been completed. See, e.g., Walji, __F.3d__, 2007 WL 1747911, at *1 (affirming district court's decision where, "[b]ecause the 120-day time period was never triggered, the district court held that it lacked jurisdiction over [the] lawsuit and dismissed it"); Martinez, 463 F. Supp. 2d at 572 ("Because the statutory 120-day period has not yet begun to run, let alone expired, the petitioner is without a cause of action that can be presently addressed by this court."); Danilov, 370 F. Supp. 2d at 444 (same); El Kassemi, 2006 WL 2938819, at *2 (same); Damra v. Chertoff, 2006 WL 1786246, at *3 (N.D. Oh. June 23, 2006) (same); but see Al-Farisi v. Mueller, No. 06 Civ. 15504 (MGC), 2007 WL 1720145, at *2 (S.D.N.Y. June 14, 2007) (rejecting Government's view that "examination" is not discrete event, denying motion to dismiss for lack of subject matter jurisdiction, and remanding matter to FBI and CIS to complete background investigation and adjudication of naturalization application within 60 days); Alhamedi v. U.S. Att'y Gen'l, No. 07 Civ. 2541 (JGK), 2007 WL 1573935, at *3 (S.D.N.Y. May 29, 2007) (exercising jurisdiction where applicant "received no determination within 120 days of [his naturalization] interview because the CIS awaited the FBI's background check") (citing cases); cf. Mostovoi v. Sec'y of DHS, No. 06 Civ. 6388 (GEL), 2007 WL 1610209, at *2 (rejecting Government's argument and denying motion to dismiss where FBI completed background investigation during pendency of Government's motion).[11]

---

[11]As Judge Cedarbaum noted in Al-Farisi, see 2007 WL 172015, at *2, and Judge Koeltl in Alhamedi, see 2007 WL 1573935, at *3 n.3, the majority of district courts to have considered the question have held that the "examination" contemplated by INA § 336(b) is a discrete event and that, consequently, there existed jurisdiction where more than 120 days had passed since a naturalization interview. See, e.g., Hussein v. Gonzales, 474 F. Supp. 2d 1265, 1267 (M.D. Fla. 2007); Manzoor
(continued...)

Because the FBI has not yet completed its investigation into Zahir's background here, see Amended Complaint ¶ 11 & Exhibit 6; Cannon Decl. ¶ 36, the "examination" contemplated by the naturalization statutes has not yet been completed – and, consequently, the 120-day period described in INA § 336(b) has not yet begun to run. For that reason, the Court lacks jurisdiction to consider the amended complaint under INA § 336(b), and should dismiss it.

## POINT II

### THE AMENDED COMPLAINT SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH THE COURT MAY GRANT RELIEF

Even if the Court does not dismiss the amended complaint for lack of subject matter jurisdiction, the Court should dismiss it for failure to state a claim upon which the Court may grant relief. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) (court's function on motion to dismiss for failure to state claim is "to assess the legal feasibility of the complaint").

Notwithstanding the review provisions of INA § 336(b), the Court lacks the power to grant Zahir the alternative relief he seeks, i.e., it may not "grant [him] citizenship." Amended Complaint ¶ 22. As has been noted, the Attorney General (and his delegates) have "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a) (emphasis added). However, although Congress has given the Attorney General and his delegates authority over naturalization, it has also

---

[11](...continued)
v. Chertoff, 472 F. Supp. 2d 801, at 807-10 (E.D. Va. 2007); Khelifa v. Chertoff, 433 F. Supp. 2d 836, 841-42 (E.D. Mich. 2006); El-Daour v. Chertoff, 417 F. Supp. 2d 679, 683 (W.D. Pa. 2005); Lin v. Sec'y, U.S. Dep't of Homeland Security, 2007 WL 1231482, at **1-2 (W.D.N.Y. April 24, 2007); Mahd v. Chertoff, 2007 WL 891867, at **2-3 (D. Colo. Mar. 7, 2007); Aslam v. Gonzales, 2006 WL 3749905, at 1 (W.D. Wash. Dec. 19, 2006); Shalabi v. Gonzales, 2006 WL 3032413, at *3 (E.D. Mo. Oct. 23, 2006); Khan v. Chertoff, 2006 WL 2009055, at *2 (D. Ariz. July 14, 2006); Meyersiek v. U.S. CIS, 2006 WL 1582397, at *3 (D.R.I. June 6, 2006); Daami v. Gonzales, 2006 WL 1457862, at *4 (D.N.J. May 22, 2006); Al-Kudsi v. Gonzales, 2006 WL 752556, at *2 (D. Or. Mar. 22, 2006); Shalan v. Chertoff, 2006 WL 42143, at * 1 (D. Mass. Jan. 6, 2006); Essa v. U.S. CIS, 2005 WL 3440827, at *2 n.2 (D. Minn. Dec. 14, 2005).

made a "personal investigation" of all naturalization applicants a prerequisite to naturalization – and

has limited the CIS's authority by mandating that "none of the [its] funds . . . shall be used to

complete adjudication of an application for naturalization unless [it] has received confirmation from

the [FBI] that a full criminal background check has been completed." 1998 Appropriations Act, 111

Stat. at 2448-49 (1997).

Thus, courts (including all three judges in this District to have considered the question) have

declined to waive or circumscribe the investigation requirement in the naturalization context. See,

e.g., Al-Farisi, 1720145, at *3 ("holding that "it is not within the Court's authority to adjudicate a

naturalization application before receiving the results of the FBI's name check"); Mostovoi, 2007

WL 1610209, at *4 ("judicial determination of [a naturalization] application should be treated as a

last resort"); Alhamedi, 2007 WL 1573935, at *3 ("[N]early every court confronting the question

has agreed with defendants that it would be inappropriate to adjudicate a naturalization application

in the absence of a completed FBI background check."). As a district judge in New Jersey recently

put it, "to adjudicate petitioner's application without completion of the criminal background check

would contravene Congress's intent that an FBI background check be completed prior to the

adjudication of every naturalization application." Kheridden v. Chertoff, 2007 WL 674707, at *5

(D.N.J. Feb. 28, 2007); see also, e.g., Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex.

2005) ("[w]ithout [a completed background investigation], respondents cannot approve petitioner's

application for naturalization. Nor does the immigration service have authority to expedite the FBI

investigation or give petitioner priority over background checks requested by other agencies.

Unfortunately, delays of this nature are inevitable and becoming more frequent in light of heightened

security concerns in the post-911 world."); Khelifa, 433 F. Supp. 2d at 840 (E.D. Mich. 2006)

(noting that "background check is an essential part of the CIS's assessment of an application for

naturalization"); <u>Danilov</u>, 370 F. Supp. 2d at 444 (E.D. Va. 2005) (same); <u>Babel v. U.S. Dep't of Homeland Security</u>, 321 F. Supp. 2d 963, 964 (N.D. Ill. 2004) (same); <u>El Kassemi</u>, 2006 WL 2938819, at *2 (same).[12]

Even where declining to dismiss complaints of naturalization applicants like Zahir, courts have recognized that the CIS and FBI face a considerable administrative burden in processing the large number of naturalization application now pending. <u>See</u> Cannon Decl. ¶ 18; <u>Arshad v. Chertoff</u>, 2007 WL 701185, at *2 (E.D. Tex. March 2, 2007) (noting that "the FBI receives approximately 3.4 million requests per year for these background checks"). Thus, this case is similar to one in which Judge Swain held that an alien's "request for adjudication [of his application for immigration status adjustment] disregards entirely the fact that there are 160,000 applications pending aside from his own." <u>Saleh v. Ridge</u>, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (dismissing complaint seeking to compel adjudication of five-year-old adjustment application).

Thus, even courts that have declined to dismiss complaints (including the only judges in the District to have considered the question) have tried to craft relief that takes into account the FBI's and CIS's caseload. <u>See, e.g.</u>, <u>Al-Farisi</u>, 2007 WL 1720145, at *3-4 (ordering FBI to complete background check within 30 days and CIS to complete adjudication of naturalization application 30 days thereafter); <u>Alhamedi</u> 2007 WL 1573935, at *4 (noting that the "Court is aware of the significant administrative burden heightened security concerns have placed on agencies such as the

---

[12]Courts have also declined to take the task on themselves, recognizing that the judiciary is ill-suited to perform the "personal investigation" required by the naturalization laws. <u>See, e.g.</u>, <u>Khelifa</u>, 433 F. Supp. 2d at 840 (holding district court was incapable of fulfilling statutory investigation requirement); <u>El-Daour v. Chertoff</u>, 417 F. Supp. 2d 679, 684 (W.D. Pa. 2005) (holding court "is not equipped to conduct such an investigation"; remanding with instruction that CIS expeditiously adjudicate naturalization application following FBI's completion of background investigation); <u>Shalabi</u>, 2006 WL 3032413, at *4 (same); <u>Alnabi</u>, 2006 WL 2990338, at *3 (same); <u>Essa</u>, 2005 WL 3440827, at *2 (same); <u>cf.</u> <u>United States v. Ramos</u>, 933 F.2d 968, 971 n.1 (11th Cir. 1991) ("Criminal investigations are an executive function.").

FBI"; also ordering FBI to complete background check within 30 days and CIS to complete adjudication of naturalization application 30 days thereafter);[13] Blives v. Gonzales, 2007 WL 1789122, at *2 (S.D. Fla. June 19, 2007) (remanding matter to CIS but refusing to set time limit for adjudication; holding that "[t]he Court . . . is unwilling to jump the plaintiff's application to the front of the line as it may create perverse incentives for other naturalization applicants seeking to expedite their applications"); Awada v. Gonzales, 2007 WL 1218769, at **1-2 (E.D. Mich. April 24, 2007) (refusing to set a deadline for completion of background investigation; directing FBI to expedite background investigation and CIS to adjudicate naturalization application "as expeditiously and promptly as possible"); Shalabi, 2006 WL 3032413 at *4 (refusing to set deadline for completion of background check and refusing to order check expedited); see also, e.g., Lin, 2007 WL 1231482, at *2 (instructing CIS to complete adjudication within 120 days); Ahmed v. Chertoff, 2006 WL 3771814 (S.D. Tex. Dec.15, 2006) (instructing FBI to complete background check within 120 days); Alnabi, 2006 WL 2990338, at *3 (instructing CIS to complete adjudication within 150 days).

---

[13] Although INA § 336(b) contemplates a remand "with appropriate instructions," the strict time frame adopted by Judge Koeltl reflects that Alhamedi pointed to irreparable harm absent naturalization within that time frame. See id. at *2 (noting petitioner faced irreparable harm because of his daughter's approaching age-out in August 2007). Zahir does not allege that he faces such irreparable harm, so such a strict schedule for the adjudication of his naturalization application would not be appropriate here. See, e.g., Maldonado-Coronel v. INS, 943 F. Supp. 376, 378-80 (S.D.N.Y. 1996) (declining to waive or expedite FBI background check even where plaintiff claimed his minor child was about to "age out" of eligibility for derivative immigration relief); Zheng v. INS, 933 F. Supp. 338, 341-43 (S.D.N.Y. 1996) (same).

## <u>CONCLUSION</u>

          **For the foregoing reasons, the Court should dismiss the amended complaint for lack**

**of subject matter jurisdiction and failure to state a claim upon which the Court may grant**

**relief.**

Dated:        New York, New York
              June 29, 2007

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Defendants


                              By:       /s/
                                        F. JAMES LOPREST, JR. (FJL:3210)
                                        Special Assistant United States Attorney
                                        86 Chambers Street, 4th Floor
                                        New York, New York  10007-2601
                                        Tel. No.: (212) 637-2728